IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIM. NO. 13-771 (SCC) |
| SIMON OSTOLAZA-ROBLES, | |
| Defendant. | |

## OPINION AND ORDER

Simon Ostolaza-Robles is a seventy-three-year-old man who has been detained pending trial for more than eight years. The Court has found that he is incompetent with no hope of restoration, and the Bureau of Prisons has concluded that he is not dangerous and, thus, does not warrant civil commitment. He now moves the Court to release him and dismiss the indictment because, he says, his detention is not statutorily authorized and violates due process.

Before we begin, we note that our analysis and holding have been constrained by the parties' briefing. First, the United States dedicates its opposition to arguing that we should condition Mr. Ostolaza's release under a statute that it

conceded on appeal does not apply. And for good reason, too, as it is obvious that it does not apply. We gave the United States a chance to supplement its opposition, but it chose not to. Mr. Ostolaza's motion, therefore, is essentially unopposed, and we are left without the benefit of adversarial briefing.

Second, though represented by counsel, Mr. Ostolaza raises only one constitutional basis to dismiss his indictment: the Due Process Clause. However, in his *pro se* petition for writ of mandamus before the First Circuit Mr. Ostolaza presented a strong argument that the United States has violated his Sixth Amendment right to a speedy trial. But because he has advanced only a due process challenge here, we limit our analysis accordingly.

## I. BACKGROUND

In 2013, the grand jury charged Mr. Ostolaza with one count: carjacking resulting in death, 18 U.S.C. § 2119(3). Docket No. 27. At his arraignment, he pleaded not guilty. Docket No. 41. In 2016, after years of pretrial discovery and plea negotiations, the United States requested a competency

evaluation under § 4241. Docket Nos. 247, 251.

The Bureau of Prisons ("BOP") concluded that Mr. Ostolaza is not competent to stand trial because his memory, attention, and concentration deficits hinder his ability to assist in his defense. Docket No. 260, pg. 14. The Court, accordingly, found that Mr. Ostolaza is incompetent and committed him to the Attorney General's ("AG") custody under § 4241(d) to determine whether his competency is restorable. Docket No. 261. The BOP later determined that "[h]e is not likely to acquire the capacity to proceed in the foreseeable future." Docket No. 274, pg. 13.

The United States then informed the Court that Mr. Ostolaza may be subject to § 4246—a civil-commitment statute for incompetent, dangerous persons—and that it was waiting for the BOP to conduct a dangerousness evaluation. Docket Nos. 275, 300. At the United States' request, the Court ordered an expert, Dr. Grodzinski, to conduct an evaluation. Docket Nos. 320, 323, 324. Dr. Grodzinski determined that Mr. Ostolaza "has a potential for dangerousness due to his mental

condition." Docket No. 337-1, pg. 29. Mr. Ostolaza's expert, however, concluded that he has a low risk of future violence. Docket No. 337-1, pg. 14.

Relying on Dr. Grodzinski's report, the United States informed the Court that Mr. Ostolaza is dangerous, and the Court found that he is. Docket No. 326. Later, the Court vacated this finding and ordered the BOP to conduct a dangerousness evaluation. Docket No. 327. Mr. Ostolaza then filed a petition for writ of mandamus with the First Circuit, seeking conditional release or placement in a mental-health facility. Petition for Writ of Mandamus, *In re Ostolaza-Robles*, No. 19-1369 (1st Cir. Apr. 14, 2019). The First Circuit held this petition under advisement and instructed the parties to formally address the issue of competency and, if necessary, dangerousness before the district court. Order of Court, *In re Ostolaza-Robles*, No. 19-1369 (1st Cir. June 7, 2019).

The parties jointly moved the Court for a competency hearing, Docket No. 332, and, at the hearing, agreed that Mr. Ostolaza is incompetent, Docket No. 344. The Court found the

same. Docket Nos. 347, 351. But did not make a finding as to whether his competency is restorable.

Afterwards, the BOP filed its dangerousness evaluation, which opined that Mr. Ostolaza is not dangerous because of his mental disease or defect and, thus, should not be committed under § 4246. Docket No. 366, pg. 11. Mr. Ostolaza then moved for immediate release and to dismiss the indictment on the grounds that his detention is not authorized by statute and violates due process. Docket No. 370. In its opposition, the United States argued that the Court should "exercise [its] discretion under § 4246(e)" and "condition his discharge and release." Docket No. 378, pgs. 8–9. About a week later, the United States moved the Court to commit Mr. Ostolaza to the custody of the AG under § 4241(d), stating that he had not yet been committed under it. Docket No. 380, pg. 2. But that, of course, was not accurate. Docket No. 396, pg. 8. The Court nonetheless granted its motion. Docket No. 385.

Mr. Ostolaza appealed the commitment order. The parties agreed to a limited remand to make a finding as to whether Mr. Ostolaza "is likely to acquire the capacity to proceed in the foreseeable future." *See* Order of Court, *United States v. Ostolaza-Robles*, No. 21-1701 (1st Cir. Oct. 6, 2021). After a hearing, we found that his competency will not be restored. Docket No. 419. Back on appeal, the parties agreed to vacate the commitment order and remand the case to resolve his motion for immediate release. Judgment, *United States v. Ostolaza-Robles*, No. 21-1701 (1st Cir. Jan. 12, 2022).

## II.   MOTION FOR IMMEDIATE RELEASE

Mr. Ostolaza has moved the Court to release him and dismiss the indictment on two grounds: His detention (1) is not authorized by statute and (2) violates due process. We evaluate each in turn.

### A.  18 U.S.C. §§ 4241, 4246

Mr. Ostolaza argues that because he is incompetent and not dangerous—and, thus, cannot be civilly committed under § 4246—there is no legal basis for his detention. Docket

No. 370, pgs. 2–3. Therefore, he says, we must release him and dismiss the indictment. *Id.* at 3. But the statutory scheme does not compel us to do either, and there is a legal basis for his detention: The United States has indicted him on one count of carjacking resulting in death and Magistrate Judge López has ordered that he be detained pending trial.

We begin with an overview of the competency and civil-commitment statutes, 18 U.S.C. §§ 4241, 4246, to provide context for our analysis. Section 4241 provides a "streamlined procedure" to determine a defendant's competency. *United States v. Mahoney*, 717 F.3d 257, 263 (1st Cir. 2013). First, if there is "reasonable cause" to believe that the defendant is incompetent, the court must hold a hearing. § 4241(a). If, after the hearing, the court finds that the defendant is incompetent, it must commit him to the AG's custody, where he will be hospitalized for a reasonable time until the court determines whether there is a substantial probability that his competency will be restored. § 4241(d), (d)(1). If his competency is restorable, the court commits him again to the AG's custody

for a reasonable time until he regains his competency or the charges are dismissed. § 4241(d)(2). But if his competency is not restorable, the defendant is subject to § 4246. § 4241(d).

Section 4246 lays out the procedure to civilly commit a defendant who is dangerous because of his mental disease or defect. *See United States v. Wetmore*, 812 F.3d 245, 247 (1st Cir. 2016). Proceedings under it are triggered only when "the director of a facility in which [the defendant] is hospitalized certifies" to the court that he is "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property" and "suitable arrangements for State custody and care . . . are not available." § 4246(a); *see also United States v. Curbow*, 16 F.4th 92, 96 (4th Cir. 2021). When the court receives this certification, it must hold a hearing. § 4246(a). If, after the hearing, the court finds that the defendant is dangerous because of his mental disease or defect, it must commit him to the AG's custody. § 4246(d). Later, if the director of the facility where the person has been

committed under § 4246(d) certifies to the court that he has recovered, § 4246(e) permits the court to discharge or conditionally discharge him.

We have found that Mr. Ostolaza is incompetent and that his competency cannot be restored. He, therefore, is subject to § 4246. But because the BOP has not certified that he is dangerous—it, indeed, concluded the opposite—proceedings under § 4246 have not been triggered. Mr. Ostolaza finds himself in a statutory void: He is incompetent and, thus, cannot stand trial but is not dangerous and, thus, cannot be civilly committed. *See United States v. Ecker*, 78 F.3d 726, 728 n.3 (1st Cir. 1996) ("Nor do the statutes address the pendency or dismissal of an indictment of a defendant found long-term incompetent under section 4241, but not found dangerous under section 4246."). He argues that, because he cannot stand trial nor be committed, we must release him and dismiss the indictment. Docket No. 370, pg. 5; Docket No. 423, pg. 3. The First Circuit rejected a similar argument in *Ecker*, and we believe that its reasoning applies here.

In *Ecker*, the defendant had moved to dismiss the indictment after he had been declared incompetent under § 4241 and civilly committed under § 4246 on the ground that Congress intended that the indictment be dismissed upon commitment. 78 F.3d at 728. The First Circuit rejected this argument, concluding that the statutes' silence was "virtually dispositive" and that it had "little doubt" that Congress "intended to leave the decision about the disposition of pending charges to the case-by-case discretion of the prosecutors." *Id.*

Neither § 4241 nor § 4246 speak to whether an indictment must be dismissed where the defendant is incompetent but cannot be civilly committed. *See id.* at 728 n.3. It follows from *Ecker* that their silence indicates that Congress intended to leave the decision of whether to dismiss the indictment in this situation to the prosecutors' discretion. For the prosecutors could, for example, seek another competency determination. *Id.* at 729 & n.5. And granting one would be a more "appropriate judicial response . . . than a judicial

rewriting of the statute to require dismissal of an indictment that the prosecutor seeks to preserve." *Id.* at 729. Sections 4241 and 4246, thus, do not require us to dismiss the indictment.

As to Mr. Ostolaza's argument that we must release him because there is no statute that provides for his detention, Docket No. 423, pg. 2, we believe that he is conflating the concepts of commitment and detention. To be sure, because the BOP has not certified that he is dangerous, he cannot be committed under § 4246. But he is detained because he stands accused of carjacking resulting in death, Docket No. 27, and the magistrate judge determined that pretrial detention is warranted, Docket No. 23. So, there is a statutory basis for his detention: the Bail Reform Act, 18 U.S.C. § 3142.

Rather than oppose Mr. Ostolaza's request that we release him and dismiss the indictment, the United States in its opposition instead asks the Court to condition his release under § 4246(e). Docket No. 378, pg. 2. After it had filed its opposition, however, it conceded before the First Circuit that § 4246 has not been triggered, so no proceedings can take

place under it. *See* Joint Response to Order of Court at 9, *United States v. Ostolaza-Robles*, No. 21-1701 (1st Cir. Dec. 27, 2021). Aware of this, we allowed it to supplement its opposition, Docket No. 422, but it chose not to. We cannot condition Mr. Ostolaza's release under § 4246(e) because that provision permits the court to conditionally discharge a defendant when the director of the facility that he has been committed to under § 4246(d) certifies to the court that he has recovered. Mr. Ostolaza, however, has not been committed under § 4246(d), so § 4246(e) is not available to us.

Though neither § 4241 nor § 4246 require us to release Mr. Ostolaza or dismiss the indictment, we may grant this relief if the United States has denied him his Sixth Amendment right to a speedy trial or his Fifth Amendment right to due process of law. *See, e.g., Jackson v. Indiana*, 406 U.S. 715, 740 (1972). But because he has not advanced his right to a speedy trial here, we limit our inquiry to whether the United States has denied him his Fifth Amendment right to due process of law.

### B.  Due Process

Mr. Ostolaza argues that the "dictates of due process" set forth in *Jackson v. Indiana*, 406 U.S. 715 (1972), require the Court to release him and dismiss the indictment. Docket No. 423, pg. 2. To be sure, *Jackson* states that if a defendant is incompetent and his competency cannot be restored, the sovereign prosecuting him must civilly commit him or release him. 406 U.S. at 738. It also mentions in passing that there is a "denial of due process inherent in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove his innocence." *Id.* at 740. *Jackson*, however, does not say that an incompetent defendant who cannot be committed must be immediately released, *cf. id.* at 740–41 (discussing proceedings that can take place after the defendant is declared incompetent), nor when an indictment has been pending for so long that it violates due process. *Jackson*, thus, does not answer the questions presented here.

We resort to basic principles, beginning with Mr. Ostolaza's argument that his detention violates due process.

Pretrial detention violates due process when it "become[s] excessively prolonged, and therefore punitive," rather than regulatory. *United States v. Salerno*, 481 U.S. 739, 747–48 & 747 n.4 (1987). The length of pretrial detention is excessive when it is no longer related to its regulatory purposes, including protecting the public from dangerous defendants and ensuring that they will not flee. *United States v. Torres*, 995 F.3d 695, 709–10 (9th Cir. 2021). There is no set time when pretrial detention crosses the line from regulatory to punitive because due process is a flexible concept and, thus, its limits depend on the facts of the case. *United States v. Zannino*, 798 F.2d 544, 547 (1st Cir. 1986). In evaluating whether the length of Mr. Ostolaza's pretrial detention violates due process, we balance six factors: (1) "the seriousness of the charges," (2) "the strength of the government's proof that [Mr. Ostolaza] poses a risk of flight or a danger to the community," (3) "the strength of the government's case on the merits," (4) "the length of the detention," (5) "the complexity of the case," and (6) "whether the strategy of one side or the other has added

needlessly to that complexity." *Id.* (quoting *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986)).

Mr. Ostolaza is charged with committing a grave crime: He has been accused of carjacking resulting in death—a death-eligible offense for which he faces life imprisonment. 18 U.S.C. § 2119(3); *see* Docket No. 203 (notice of intent not to seek the death penalty). And, from our review of the record, the United States appears to have a strong case. As to his dangerousness, the United States argues that Mr. Ostolaza is dangerous based on offenses from the 1970's, his lack of a stable home and means to support himself, and reports indicating that he would do best in a structured environment. Docket No. 378, pgs. 2–4. The record, however, contains conflicting evidence about whether he poses a risk of harm to others. *Compare* Docket No. 337-1, pg. 14 (opining that he poses a low risk of future violence), *with* Docket No. 337-1, pg. 29 (opining that he is dangerous). Moreover, Mr. Ostolaza has been detained for more than eight years. Finally, though this case is not complex, our review of the record shows that the

United States has nonetheless added to its complexity by presenting flawed arguments, for example, invited our erroneous commitment order by telling the Court that Mr. Ostolaza had not yet been committed under § 4241(d).  It also invited the Court to initiate dangerousness proceedings under § 4246 without the BOP having certified that Mr. Ostolaza is dangerous. And it is still asking us to act under § 4246 though it has not been triggered.

Based on the seriousness of the charge against Mr. Ostolaza, we believe that due process would tolerate an unusually long period of pretrial detention in this case. *See Zannino*, 798 F.2d at 547–48 (explaining that due process tolerates longer detentions where the defendant has been accused of a serious crime). But whatever period it might tolerate has come and gone. As a guidepost, the First Circuit has said, in most cases, sixteen months of detention exceeds due process limits. *Id.* at 548. The Second Circuit has opined that two to three-year detentions can be justified only under extraordinary circumstances. *Cf. United States v. Briggs*, 697

F.3d 98, 103 (2d Cir. 2012) ("[V]ery long detentions must be exceptional."); *United States v. El-Hage*, 213 F.3d 74, 77, 81 (2d Cir. 2000) (upholding pretrial detention of thirty to thirty-three months where the defendant had been charged "with being a key participant in the terrorist organization founded by [Osama] Bin Laden, called 'al Qaeda'"). And the Ninth Circuit has recently stated that a twenty-one-month detention is "significant under any metric and is deeply troubling." *Torres*, 995 F.3d at 709 (upholding the district court's conclusion that the defendant's detention did not yet violate due process but stating "due process demands that the district court begin [his] trial or reconsider bail subject to appropriate conditions very soon").

On balance, although Mr. Ostolaza has been accused of a grave offense and the United States' case against him appears strong, the record contains conflicting evidence as to his dangerousness, he has been detained for over eight years, and the United States has added to the complexity of this case. The latter factors—especially the length of his detention—far

outweigh the former. *Cf. Briggs*, 687 F.3d at 103 ("There is no bright-line limit on the length of detention that applies in all circumstances; but for every set of circumstances, due process does impose some limit."). Mr. Ostolaza's eight-year pretrial detention amounts to punishment without trial and, thus, violates due process. We grant his motion insofar as it seeks his release.

Mr. Ostolaza's indictment, however, does not violate due process. He argues that we must dismiss it "based on the dictates of due process encompassed in *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)." Docket No. 423, pg. 2. But he does not develop this argument. *Jackson* states, in dicta, that there is a "denial of due process inherent in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove his innocence." 408 U.S. at 740. The First Circuit in *Ecker* noted that this statement is supported by only one state-court decision and two federal-district-court decisions. 78 F.3d at 731 n.6. There appears to be little caselaw dismissing indictments on the ground that the length of time

that they have been pending violates due process.

Without the benefit of briefing on this issue, we resort again to basic principles. The Due Process Clause contains a procedural and a substantive component. *Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir. 1991). Procedural due process governs the process that is due before the United States deprives an individual of his life, liberty, or property. *Matthews v. Eldridge*, 424 U.S. 319, 332–33 (1976). Substantive due process, in contrast, limits what the United States may do regardless of the process that it provides. *Pittsley*, 927 F.3d at 6. Mr. Ostolaza is challenging the United States' conduct (*i.e.*, holding an indictment over him though he cannot stand trial) rather than the process that it has provided to him, so he has advanced a substantive due process challenge.

Mr. Ostolaza may prove that the United States has violated his substantive due process rights by showing that it committed an act that "shock[s] the conscience" and violated a specific liberty interest protected by the due process clause. *Martínez v. Hongyi Cui*, 608 F.3d 54, 64–66 (1st Cir. 2010).

*Jackson*, in dicta, acknowledges a due process right not to have an indictment hanging over one's head indefinitely. 408 U.S. at 740. Assuming for our analysis that this right exists, and the United States has violated it, Mr. Ostolaza has not argued nor explained to us how the United States' conduct shocks the conscience. *See Martínez*, 608 F.3d at 65 ("Only conscience-shocking behavior can be sufficiently arbitrary and egregious to be of constitutional significance."). Our conscience is not shocked by the length of time that the indictment has been pending because Mr. Ostolaza has been accused of carjacking resulting in death, for which he faces life imprisonment. Though not perfectly analogous, the First Circuit has held that a defendant's commitment under § 4246 violates due process when he has been committed for longer than the maximum sentence that he could have received had he been found guilty of the offense that he is accused of committing. *See United States v. DeBellis*, 649 F.2d 1, 3 (1st Cir. 1981). In these cases, the indictment remains pending while the defendant is committed. *Ecker*, 78 F.3d at 731. We are extremely troubled

by the length of time that the indictment has been pending, but because Mr. Ostolaza could receive life imprisonment if found guilty, we do not believe that eight years "shocks the conscience" or exceeds the "decencies of civilized conduct." *Cf. Rochin v. California*, 342 U.S. 165, 172–73 (1952) (holding that pumping a suspect's stomach against his will to remove evidence shocks the conscience). We, therefore, decline to dismiss the indictment on due process grounds.

### III. CONCLUSION

Though Mr. Ostolaza is incompetent but not dangerous and, thus, cannot stand trial nor be civilly committed, the Court is not required by statute to dismiss the indictment against him—Congress has left that decision to the prosecutors' discretion. And the length of time that his indictment has been pending does not violate the Due Process Clause, which is the only constitutional argument that Mr. Ostolaza has raised.

In sum, the Court **GRANTS in part and DENIES in part** Mr. Ostolaza's motion for immediate release (Docket No.

370). We have granted his motion insofar as it seeks his release. But we **STAY** his release until we issue conditions of it. Both parties appear to agree that Mr. Ostolaza should be placed in a halfway house, and they may wish for other conditions as well. We will schedule a hearing by separate order to discuss the conditions of his release.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 15th day of February 2022.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE